

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

April 19, 2018

The Honorable Joseph C. Pickett
Chair, Committee on Environmental Regulation
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. KP-0190

Re: To what extent the Texas Commission on Environmental Quality may consider a recommendation from a local government to deny a permit for a facility because the facility is incompatible with the local government's zoning or land use ordinances (RQ-0185-KP)

Dear Representative Pickett:

You tell us that the Texas Commission on Environmental Quality (the "Commission") "issued a Standard Permit under the Texas Clean Air Act . . . for the operation of a concrete crushing plant in Fort Worth."[1] You state that, prior to the issuance of the permit, the City of Fort Worth "provided [the Commission] with a resolution adopted by the city's governing body strongly opposing the issuance of the permit and stating that the operation of the plant would be incompatible with the city's zoning regulations." Request Letter at 1. You first ask to what extent section 382.112 of the Health and Safety Code requires the Commission "to consider a recommendation from a local government to deny a permit . . . because the facility is incompatible with the local government's zoning or other land use ordinances." *Id.* Section 382.112 provides that a "local government may make recommendations to the commission concerning a rule, determination, variance, or order of the commission that affects an area in the local government's territorial jurisdiction" and that the Commission "shall give maximum consideration to a local government's recommendations." TEX. HEALTH & SAFETY CODE § 382.112. In briefing received by this office, the Commission asserts that while it "gives maximum consideration to recommendations from local governments on whether to approve an air quality permit," its determinations are "limited to the requirements and prohibitions specified in the [Texas Clean Air Act]," and thus, the Commission "does not review or consider whether an applicant is compliant with any other . . . local requirement."[2] Other briefing counters that section 382.112 constitutes a

---

[1]*See* Letter from Honorable Joseph C. Pickett, Chair, House Comm. on Envtl. Regulation, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Oct. 10, 2017), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]*See* Brief from Caroline M. Sweeney, Deputy Dir., Office of Legal Servs., Tex. Comm'n on Envtl. Quality at 6 (Nov. 13, 2017) (on file with the Op. Comm.).

"mandate to defer to a city's recommendation," which applies "regardless of the legal authority . . . underlying the recommendation."[3]

The Commission administers the Texas Clean Air Act (the "Act"), which the Legislature enacted for the policy and purpose of "safeguard[ing] the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants." *Id.* § 382.002(a); *see also id.* § 382.011(a)(1) (directing the Commission to administer the Act). The Legislature charged the Commission with establishing and controlling the State's air quality "through the control of air contaminants by all practical and economically feasible methods." *Id.* § 382.011(a)(2)–(3), (b). In doing so, the Commission must, among other things, "advise, consult, and cooperate with . . . political subdivisions of the state . . . concerning matters of common interest in air quality control." *Id.* § 382.036(4).

The Commission may issue various types of permits for the construction or modification of facilities "that may emit air contaminants," including a standard permit for facilities that are similar. *Id.* § 382.051(a)(1), (b)(3). General standard permits are issued pursuant to section 382.05195 of the Act, which authorizes the Commission to issue a permit for new or existing similar facilities "if the commission finds that: (1) the standard permit is enforceable; (2) the commission can adequately monitor compliance with the terms of the standard permit"; and (3) the facilities will use specified control technologies based on the timing of the application. *Id.* § 382.05195(a); *see also id.* § 382.05195(b)–(d) (requiring public notice of the proposed standard permit, public meeting, and comment opportunity). Permanent concrete plants that perform wet batching, dry batching, or central mixing are governed by the specific standard permit provisions in sections 382.05198 and 382.05199 of the Act. *See id.* §§ 382.05198(a) (providing that the Commission "shall issue" such permits to plants that meet certain listed requirements), 382.05199(h) (governing public notice and hearing requirements for standard permits issued under section 382.05198 and directing the Commission's executive director to approve or deny the application within a certain time frame "base[d] . . . on whether the application meets the requirements of Section 382.05198").[4] Neither the general standard permit provision nor the specific standard permit provision applicable to certain concrete plants requires consideration of factors outside of the Act.

Section 382.112 applies to a local government's recommendation "concerning a rule, determination, variance, or order of the commission." *Id.* § 382.112. With regard to standard permits, the determination the Commission makes is whether a permit application meets statutory and administrative prerequisites such that the Commission is authorized or required to issue the permit, and not whether the applicant meets local zoning and land use requirements.[5] *See S.*

---

[3]*See* Brief from Scott Houston, Deputy Exec. Dir. & Gen. Counsel, Tex. Mun. League & Tex. City Atty's Ass'n at 4 (Nov. 9, 2017) (on file with the Op. Comm.).

[4]You do not tell us whether the standard permit issued in this instance was pursuant to section 382.05195 (Standard Permit) or section 382.05198 (Standard Permit for Certain Concrete Plants).

[5]*But see* TEX. HEALTH & SAFETY CODE §§ 382.024 (requiring that in issuing orders and making determinations, the Commission "shall consider the facts and circumstances bearing on the reasonableness of emissions, including . . . the source's social and economic value [and] the question of priority of location in the area involved . . . ."), 382.065 (prohibiting certain locations from operating concrete crushing facilities).

*Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d. 676, 678 (Tex. 2013) ("In issuing a permit, the Commission determines that the permit application satisfies the [Act] and applicable rules."). Thus, in answer to your first question, section 382.112 requires the Commission to consider a local government's recommendation only to the extent that the recommendation concerns the statutory and administrative requirements of the Act.[6]

You also ask whether it would make a difference "if the local government's recommendation was . ... adopted in accordance with Section 382.113 . . . , which specifically authorizes the adoption and enforcement of municipal ordinances for the control and abatement of air pollution." Request Letter at 1; *see also* TEX. HEALTH & SAFETY CODE § 382.113(b) (providing that any such municipal ordinances "must be consistent with [the Act] and the commission's rules and orders"). The Commission makes determinations regarding compliance with the Act's requirements, not the requirements of local government ordinances. Thus, the authority for adopting the ordinance would not change the answer.

Your remaining questions are related so we address them together. You ask whether the Act "specifically preclude[s the Commission] from considering a local government's zoning, land use, and other ordinances in determining whether to issue a permit" and whether the Commission "would be authorized to deny the issuance of a permit" based on those factors. Request Letter at 1–2. With respect to standard permits under section 382.05198 for permanent concrete plants that perform wet batching, dry batching, or central mixing and meet certain other requirements, the Commission "shall" issue the permits, whereas the Commission "may" issue general standard permits under section 382.05195 if certain requirements are met. *See* TEX. HEALTH & SAFETY CODE §§ 382.05195(a), .05198(a). Thus, the statutory language appears to preclude the consideration of (and denial due to) zoning, land use, and other ordinances for section 382.05198 permits and is silent regarding section 382.05195 permits. Ultimately, judicial review of a Commission action other than cancellation or suspension of a variance focuses on "whether the action is invalid, arbitrary, or unreasonable." *Id.* § 382.032(e); *see also City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 184 (Tex. 1994) (an agency abuses its discretion or its decision is arbitrary "if the agency: (1) failed to consider a factor that the legislature directs it to consider; (2) *considers an irrelevant factor*; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result" (emphasis added)). Whether the Commission's consideration of zoning and land use regulations in a decision on a standard permit application under section 382.05195 is invalid, arbitrary, or unreasonable raises fact questions that cannot be answered in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0106 (2003) at 7 ("This office cannot find facts or resolve fact questions in an attorney general opinion.").

---

[6]We do not address what constitutes "maximum consideration" as contemplated by section 382.112 because this issue has been raised in recently-filed litigation and thus is for the trial court to determine. *See City of Marble Falls v. Tex. Comm'n on Envtl. Quality*, No. D-1-GN-18-000020 (261st Dist. Ct., Travis Cty., Tex. Jan. 2, 2018).

## S U M M A R Y

Section 382.112 of the Health and Safety Code requires the Texas Commission on Environmental Quality to consider a local government's recommendation on a standard permitting determination only to the extent that the recommendation concerns the statutory and administrative requirements of the Texas Clean Air Act. A court would likely conclude the Commission is precluded from considering local zoning, land use, and other ordinances in standard permitting decisions made under section 382.05198. The Commission could likewise be precluded from considering local zoning, land use, and other ordinances on standard permitting decisions made under section 382.05195 if a court construed such an action as invalid, arbitrary, or unreasonable.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee